**HOWARD, Appellant,**

v.

**HAMILTON COUNTY DEPARTMENT OF HUMAN SERVICES, Appellee, et al.**

[Cite as *Howard v. Hamilton Cty. Dept. of Human Serv.* (1999), 136 Ohio App.3d 33.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C-990311.

Decided Dec. 3, 1999.

**34**

*Law Offices of Arnold S. Levine,* and *Randy A. Byrd,* for appellant.

*Michael K. Allen,* Hamilton County Prosecuting Attorney, *Thomas E. Deye, Shannon M. Reynolds* and *Monica M. Saba,* Assistant Prosecuting Attorneys, for appellee.

PAINTER, Judge.

Plaintiff-appellant Raquel Howard was a recipient of publicly funded day care through defendant-appellee Hamilton County Department of Human Services ("HCDHS"). In 1996, Howard's child died while in the care of Dedra Russell, a type-B family-day-care provider certified by HCDHS. Howard brought a wrongful-death suit against HCDHS, Russell, and several other defendants. All defendants except HCDHS were dismissed, and the trial court granted summary judgment for HCDHS, holding that HCDHS had absolute immunity from the suit. Howard now appeals, asserting in her sole assignment of error that the court erred in granting summary judgment.

■ Under R.C. 2744.02(A)(1), political subdivisions are given a broad grant of immunity. This immunity, which extends to county human services departments,[1] is subject to certain exceptions. Here, Howard argues that the following exception applies: "[P]olitical subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."[2] Howard claims that, because HCDHS's contract with Russell (entitled "Purchase of Child Day Care Services Contract" ["service contract"]) required Russell to have liability insurance, HCDHS had a duty to monitor Russell's compliance, and that HCDHS negligently failed to do so. (Russell evidently had coverage at one time, but the policy lapsed for nonpayment.) Howard argues that HCDHS engaged in proprietary functions when it drafted the contract, when it entered into the contract with Russell, and when it failed to enforce the terms of the contract. According to Howard, because these activities were proprietary functions, the exception under R.C. 2744.02(B)(2) applies.

■ However, we conclude that HCDHS was not negligent because, under the plain language of the service contract, Russell was not even required to have liability insurance. And, even if she were required to have insurance, we conclude that the activities alleged by Howard were not proprietary functions; rather, they were governmental functions.

The Revised Code specifically defines certain activities as governmental functions. R.C. 2744.01(C)(2) provides a nonexhaustive list of "governmental functions[s]." Relevant here, R.C. 2744.01(C)(2)(m) defines a governmental function to be "[t]he operation of a human services department or agency, including, but not limited to, the provision of assistance to aged and infirm persons and to persons who are indigent." R.C. 2744.01(C)(2)(w) defines a governmental function to be "[a] function that the general assembly mandates a political subdivision to perform."

Here, HCDHS was responsible for administering the rules of the type-B family-day-care program as promulgated by the Ohio Department of Human Services ("ODHS"). The service contract used in this case was a form contract created by ODHS, which HCDHS was required by law to enter into with certified type-B providers.[3] Howard argues that the promulgation and enforcement of the service contract were proprietary because some of the specific terms were left to

---

1. See *Wilson v. Stark Cty. Dept. of Human Serv.* (1994), 70 Ohio St.3d 450, 639 N.E.2d 105, paragraph two of the syllabus.

2. R.C. 2744.02(B)(2).

3. See R.C. 5104.32(A); Ohio Adm.Code 5101:2–16–44(G).

the discretion of HCDHS, and because the entering of contracts is an activity customarily engaged in by private persons. But we think that Howard is attempting to make too fine a distinction. Although all the specific terms of the service contract may not have been mandated by law, we conclude that the promulgation and enforcement of the contract, in general, were part of the administration of the type-B family-day-care program, which was part of the "operation" of human-services departments under R.C. 2744.01(C)(2)(m). Also, because HCDHS had a duty under the law to enter into the service contract with certified type-B providers, we conclude that R.C. 2744.01(C)(2)(w) applies. It is true that private persons regularly contract with one another, but governmental entities also contract daily for governmental, as well as proprietary, services.

Therefore, we conclude that HCDHS's promulgation and enforcement of the service contract with Russell were governmental functions. The exception to immunity under R.C. 2744.02(B)(2) does not apply here. We affirm the judgment of the trial court.

*Judgment affirmed.*

HILDEBRANDT, P.J., and WINKLER, J., concur.